## A04A1567. PERRY v. THE STATE.
### (603 SE2d 526)

PHIPPS, Judge.

Following entry of a nonnegotiated guilty plea, LeConte Jamil Perry was convicted of felony obstruction of an officer, carrying a concealed weapon, and failure to use a safety belt in a passenger vehicle. He was given a partially probated sentence of five years imprisonment for the first offense, a consecutive twelve-month sentence for the second offense, and no incarceration for the third.

About one month after sentencing, Perry (with the assistance of a new attorney) moved to withdraw his guilty plea on grounds that it had not been intelligently, knowingly, and voluntarily entered. Specifically, Perry charged defense counsel with ineffective assistance in failing to inform him that he could plead not guilty by reason of insanity. He also charged the trial court with error in failing to conduct, sua sponte, a hearing to determine his competence. Perry appeals the trial court's denial of his motion to withdraw his guilty plea. Finding no abuse of discretion, we affirm.

The charges against Perry arose from a traffic stop effected by Douglas County Deputy Sheriff Timothy Scott in July 2002 after he observed Perry riding as a front seat passenger in a vehicle without wearing a seat belt. Scott first questioned the driver of the car, who said that Perry had a concealed weapon in the back seat. Scott secured the weapon and walked back to his patrol vehicle. As he did so, Perry stepped out of the car. Scott instructed him to get back in the car. Perry refused. Scott then attempted to place him under arrest. Perry, however, resisted arrest and punched Scott in the chest and face. Scott eventually subdued Perry with the assistance of passing motorists who had stopped to help.

At Perry's guilty plea hearing, his mother testified that he had been discharged from the Marines in 1999 after having been diagnosed as "paranoid schizophrenic, bipolar, and schizoid affective"; that, as a result of his condition, he had been hospitalized each year for the prior three years; and that he took medication for his condition, but not with the prescribed regularity.

Perry's defense attorney, Michael Webb, then advised the court as follows: Throughout the course of this proceeding, Perry had adamantly insisted that he did not want his mental condition made an issue. But after Webb announced ready to try the case at two calendar calls, Perry changed his mind on the eve of trial and decided that he did want to raise the issue of his mental responsibility. Due to Perry's delay in making this decision, Webb and Perry in consultation decided to enter a nonnegotiated guilty plea and ask the court to take Perry's mental condition into consideration at sentencing, in lieu of

making a belated request for a mental evaluation and entering a plea of guilty but mentally ill.

When the court, however, declined to order a mental evaluation of Perry or to impose treatment as part of its sentence, Webb did request a mental evaluation. The district attorney objected. Earlier in the hearing, Webb had given his opinion that Perry was fully capable of making a knowing, voluntary, and intelligent decision whether to enter a plea of guilty. After questioning Perry, the court reached the same conclusion and accepted his guilty plea. During questioning, Perry affirmed that he was taking required medications.

In moving to withdraw his guilty plea, Perry submitted records showing that he had been discharged from the Marines in 1999 after being diagnosed with "a severe case of paranoid schizophrenia" (which included auditory hallucinations and delusional thinking) and bipolar disorder; that in August 2001, a physician had examined Perry at an emergency receiving facility and found reason to believe that he might be a mentally ill person requiring involuntary treatment; that several prescription pill bottles in Perry's name had been found in his possession at the time of his arrest; and that in May 2003, Perry had to be subdued by military police because he became extremely agitated while being treated in a veterans' mental health facility.

At the hearing on Perry's motion to withdraw his guilty plea, Webb offered his opinion that Perry had capably assisted in his defense; that he had the capacity to enter a knowing and intelligent guilty plea; and that he did not meet the legal definition of insanity, although he had made some statements that "didn't make a lot of sense." Webb testified that although Perry did not want him to see his medical records, counsel persuaded Perry's mother to fax him some of the records. Webb, however, testified that he had not been made aware that Perry had been diagnosed with a condition so severe as to include delusions and hallucinations.

1. Perry charges Webb with ineffective assistance in failing to advise him that he could plead not guilty by reason of insanity and thereby obtain a verdict of either not guilty by reason of insanity or guilty but mentally ill. Perry also complains that Webb should have conducted a more extensive investigation of his medical records that would have uncovered his significant history of documented mental illness, and then requested a competency hearing or mental evaluation despite Perry's instructions to the contrary.

> In Georgia, a person is not legally insane simply because [he] suffers from schizophrenia or a psychosis. Rather, a defendant is not guilty by reason of insanity if, at the time of the criminal act, the defendant did not have the mental

capacity to distinguish between right and wrong in relation to such act or a mental disease caused a delusional compulsion that overmastered [his] will to resist committing the crime. A defendant who is not insane may nonetheless be found guilty but mentally ill if, at the time of the crime, the jury finds beyond a reasonable doubt that [he] committed the crime and had a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.[1]

A plea of mental incompetency to stand trial raises a set of issues different from those raised by a defense of legal insanity at the time of the offense.[2] The former plea raises questions of whether the defendant is capable, at the time of the trial, of understanding the nature and object of the proceedings against him, rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as would be necessary for a proper defense.[3]

To prevail on his claim of ineffective assistance of counsel, Perry must show that counsel's performance fell below an objective standard of reasonableness and that, but for the deficiency, he would not have pled guilty.[4] And the burden is on Perry to establish that he received ineffective assistance of counsel.[5] Generally, we review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[6]

Perry's claim that Webb did not fully advise him of his pleading options was contradicted by Webb. At the hearing on Perry's motion to withdraw his guilty plea, Webb testified that shortly before the case was to be tried, he and Perry "discussed at length the options that were available to him. And at that point he decided that he'd like to take the chance on a blind plea." At the hearing, Webb was also asked whether he thought he had an independent duty to disregard Perry's preferences and raise a defense of insanity. Webb responded that he had gone "round and round on this for months" and determined that Perry had the mental capacity to make a decision in that regard. The record supports this determination. Moreover, contrary to argument advanced by Perry, the transcript of the guilty plea

---

[1] (Punctuation and footnotes omitted.) *Boswell v. State*, 275 Ga. 689, 690 (1) (572 SE2d 565) (2002).

[2] *Echols v. State*, 149 Ga. App. 620 (2) (255 SE2d 92) (1979).

[3] Id. at 620-621 (2).

[4] *Young v. State*, 254 Ga. App. 262, 263 (1) (256 SE2d 231) (2002).

[5] *Van Alstine v. State*, 263 Ga. 1, 4 (426 SE2d 360) (1993).

[6] See, e.g., *Thomas v. State*, 254 Ga. App. 226, 230 (5) (561 SE2d 444) (2002).

hearing shows that Webb ultimately did ask the court to conduct a mental evaluation of Perry; but, on objection by the state, the trial court declined to do so. The record authorized the court to find that neither the medical records which counsel obtained from Perry's mother, nor Perry's conduct or demeanor, put counsel on notice that he should conduct a more extensive independent investigation of Perry's medical history over his objection. The finding that counsel's conduct did not fall below an objective standard of reasonableness is not clearly erroneous.

2. Perry next contends that the trial court erred in failing to conduct a competency hearing or have him evaluated before accepting his guilty plea.

A trial court must conduct, sua sponte, a competency hearing when the information known to the trial court at the time of the trial or plea bargain is sufficient to raise a bona fide doubt regarding the defendant's competence. The question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense? To answer this question, an appellate court focuses on three factors: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial. The defendant bears the burden of proving incompetency by a preponderance of the evidence. [Cit.][7]

We do not find that the presence of any of these three factors required the court to conduct a competency hearing. The record does not show that Perry engaged in any irrational behavior at the guilty plea hearing. Nor does it appear from the record that he exhibited incompetence from his demeanor at the hearing. "[His] responses were coherent and his behavior appropriate during all recorded phases."[8] Based on his interaction with Perry, his attorney concluded that he was fully competent to enter a guilty plea, and the court was authorized to take this into consideration in determining the need for a mental evaluation.[9] The court was not presented with any prior

---

[7] *Collins v. State*, 259 Ga. App. 587 (578 SE2d 201) (2003).

[8] *Mullinax v. State*, 211 Ga. App. 831, 833 (1) (440 SE2d 720) (1994).

[9] *Flesche v. State*, 254 Ga. App. 3, 5 (1) (561 SE2d 160) (2002).

medical opinion that Perry was incompetent. In light of what the trial court knew at the time of the plea hearing, we cannot find that it erred in accepting Perry's guilty plea without ordering a mental evaluation.[10]

3. Last, Perry contends that the trial court abused its discretion in refusing to allow him to withdraw his guilty plea. Perry claims that his plea was not knowingly, intelligently, and voluntarily entered. The record, however, supports the trial court's determination that it was. Perry also argues that, in entering the plea, he was denied effective assistance of counsel. Having found that argument also to be without merit, we find no abuse of discretion in the trial court's denial of Perry's motion to withdraw his guilty plea.[11]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 18, 2004.

*Axam, Adams & Secret, Tony L. Axam,* for appellant.
*David McDade, District Attorney, Pamela D. Brophy, Christopher R. Johnson, Assistant District Attorneys,* for appellee.

---

[10] See generally *White v. State,* 202 Ga. App. 424, 425 (414 SE2d 328) (1992).
[11] See generally *Sibley v. State,* 249 Ga. App. 664 (550 SE2d 104) (2001).